[L. A. No. 7327. In Bank.—December 30, 1925.]

## H. S. WOOD, Respondent, v. E. J. LONGYEAR, Appellant.

[1] LANDLORD AND TENANT — SEVERAL LESSEES — JOINT AND SEVERAL OBLIGATION—PRESUMPTION.—Under section 1659 of the Civil Code, the obligation of the lessees under an agreement of lease will be presumed to be joint and several in the absence of anything in the instrument itself to overcome this presumption; and in this action to recover rent under an agreement of lease made to two lessees the trial court was justified in holding that the obligation of the defendants was a joint and several obligation and that the action might have been begun and might proceed against either of them in so far as an individual remedy against either was sought, unaffected by the death or other disability of the other defendant.

[2] ID. — JOINT PLEADINGS — DEATH OF ONE DEFENDANT — RIGHT TO PROCEED AGAINST SURVIVOR. — The fact that both lessees were joined as defendants and that they united in their answer, counter-claims, and cross-complaint did not prevent the trial court from proceeding to hear and determine the merits of the defendants' affirmative pleadings, after the death of one of the defendants, until the legal representative of said defendant had been brought before the court.

[3] ID. — JOINDER OF PARTIES IN INTEREST — WAIVER OF BENEFIT OF CODE REQUIREMENT — DEATH OF CROSS-COMPLAINANT. — Conceding section 382 of the Code of Civil Procedure to be applicable to such a situation, the requirements of said section were intended solely for the benefit of the defendant (in this case the plaintiff and cross-defendant) and could be waived by him; and the requirements of said section were waived by him by his insistence upon proceeding with the trial, notwithstanding one of the defendants and cross-complainants had died and his legal representative had not been brought before the court.

1. See 6 Cal. Jur. 342.

[4] ID. — LEASE OF ROCK CRUSHER — WARRANTY OF CAPACITY — CONSTRUCTION OF CONTRACT.—In this action to recover the rent agreed to be paid under a written agreement of lease covering certain described premises "together with one rock-crushing plant with a capacity of about one hundred (100) tons per hour," the trial court properly determined that said phrase in the lease referring to the capacity of the rock-crushing plant constituted words of description and not of warranty.

[5] ID.—CONFLICTING EVIDENCE—FINDINGS—APPEAL.—In such action, the evidence having been in substantial conflict upon the contentions of the defendant as to the unsafetyness of attempts to operate the demised rock-crushing plant and as to the existence of false representations on the part of plaintiff entitling defendant to rescind, and the trial court having resolved the conflict in favor of plaintiff, the findings of the trial court were conclusive on appeal.

[6] ID.—WARRANTY—RESCISSION—FINDINGS—ERROR IN ADMISSION OF EVIDENCE.—In such action, the trial court having properly determined that plaintiff committed no breach of warranty, and properly denied the right of defendant to rescind the agreement of lease on other grounds, the error, if any, of the trial court in the admission of evidence relating to conversations between plaintiff and persons other than defendant during the negotiations preceding the making of the lease was immaterial, and furnished no ground for a reversal of the case.

---

(1) 1 C. J., p. 163, n. 11.   (2) 1 C. J., p. 1064, n. 66 New.   (3) 1 C. J., p. 258, n. 74.   (4) 36 C. J., p. 28, n. 15 New.   (5) 4 C. J., p. 883, n. 33.   (6) 4 C. J., p. 987, n. 98.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. S. Williams for Appellant.

Lawler & Degnan and J. B. Irsfeld for Respondent.

RICHARDS, J.—This appeal is by the defendant and cross-complainant, E. J. Longyear, from a judgment in the plaintiff's favor for the recovery of rent, with interest and costs, amounting to the sum of $5,503.83, claimed to be due said plaintiff upon a lease by him to the defendants of

---

5. See 2 Cal. Jur. 921.

certain premises occupied by and used as a rock-crushing plant. The complaint, which was filed on October 30, 1917, sets forth in substance that on or about April 14, 1916, an agreement in writing was entered into between said plaintiff and the defendants, W. A. Boland and E. J. Longyear, whereby the said plaintiff leased to said defendants the premises described therein for a period of three years from and after said date for a stipulated rental of $400 per month for the first year of said lease and of the sum of $725 per month for the remainder of the term, payable quarterly; that said defendants paid said rental up to and including the quarter ending May 31, 1917, excepting a balance of $210.30 on account of said last quarter, but that they failed and refused to pay the rental due for the quarter ending August 31, 1917, and also for the quarter ending November 30, 1917, amounting to the sum of $2,175 for each of said quarters, and for the total of these sums, amounting to $4,560.30, with interest, the plaintiff brings this action. The defendants appeared to said complaint and united in an answer thereto and also in a counterclaim in the same pleading and in a cross-complaint in a separate pleading. In the first count in their second answer the defendants, while admitting the making of said leasing agreement, aver that the said lease contained an express warranty that the rock-crushing plant upon the leased premises had a capacity of 100 tons per hour and that the defendants relied thereon in agreeing to enter into said lease; and that by reason of the fact that said rock-crushing plant did not have any capacity in excess of thirty tons per hour, the terms of said warranty had been violated by said plaintiff; and that on account of such warranty and of the plaintiff's said violation thereof, the said defendants had on or about the 24th of August, 1917, rescinded said leasing agreement and surrendered possession of all of the premises described therein to said plaintiff; and hence that no sum whatever was due or payable to said plaintiff from the defendants or either of them. By the second count in their said answer the defendants set forth that by a clause in said leasing agreement it was provided that if said rock-crushing plant upon said premises should be destroyed by fire, flood, or other unavoidable accident so that operation of the same must be suspended for a longer period than one week, the said lessees

should not be required to pay rent during the period of such suspension; and that owing to the fact that on or about April 6, 1917, war was declared between the United States and Germany, and as a result thereof and of the general conditions arising therefrom, and particularly of the requisition by the United States government of all railroad facilities and means of transportation, it became impossible for said lessees to get cars or transportation facilities for their output, by reason of which the suspension of operations of their said plant became necessary and the same were in fact suspended and continued to be suspended during the remaining term of said lease, the said lessees were thus absolved under the foregoing provision in said lease from any further payment of rent for said premises or the use thereof.

The third count in the defendants' said answer contains their counterclaim based upon the breach by plaintiff of the express warranty referred to in the first count thereof and of the otherwise faulty and defective construction of said rock-crushing plant whereby the said defendants were unable to adequately or profitably operate the same, but, on the contrary, were put to large expense in attempted repairs thereon and to great loss and damage in its attempted operation, amounting to the net sum of $4,667, for which they seek recovery in the way of affirmative relief. By the fourth, fifth and sixth counts in the defendants' said answer they further amplify the extent of the injury and damage which they allege themselves to have suffered from the unsuccessful operation of said rock-crushing plant due to the plaintiff's breaches in his aforesaid warranties and to his misrepresentation as to its working capacity; the aggregate of which they allege to be the sum of $85,000, for which they seek recovery. By their separate cross-complaint the said defendants repeat substantially the averments of their foregoing answer and counterclaim and pray for substantially the same amount of recovery by way of affirmative relief. To this cross-complaint the plaintiff presented an answer wherein he denied the existence of any express warranty in said leasing agreement as to the capacity of said rock-crushing plant and also denied the making of any representations as to the working capacity of said plant as

an induccment to the entering into said lease by said defendants; and denies any defectiveness in construction or working conditions of said plant which was not repairable by said defendants as provided for in said lease, and denies any right in the defendants to work rescission of said lease upon either of the foregoing grounds; and, generally speaking, otherwise denies specifically the averments of the defendants' said answer, counterclaims, and cross-complaint.

The cause came on for trial before the court without a jury upon the issues as thus framed on November 25, 1918. At the opening of the trial, counsel, who had theretofore represented both of the defendants, suggested to the court that the defendant W. A. Boland had died in the state of Michigan on September 15, 1918, and on the basis of that suggestion objected to the further progress of the trial upon the ground that the defendants having been sued jointly and having also appeared jointly by their answer and also in and by their cross-complaint, the court had no jurisdiction to proceed with the trial until the representatives of the deceased defendant had been brought before the court. The court overruled this objection and, upon the insistence of the plaintiff, directed the trial to proceed in so far as the defendant Longyear was concerned. The trial then proceeded with the introduction of much evidence, upon the conclusion of which it was submitted to the trial court for decision. Thereafter the trial court made and filed its findings of fact and conclusions of law, wherein it found that the leasing agreement had been entered into as alleged and admitted and the premises duly delivered to the defendants thereunder, and that there remained unpaid to the plaintiff the sums due as rent therefor according to the averments of the complaint. The court further found that there had been no proof presented in support of the averments of the defendants' answer as to any interference with or suspension in the operations of the said rock-crushing plant upon said premises by reason of the state of war existing between our government and Germany or of the conditions which prevailed in consequence thereof, and that the operation of said plant had not been suspended upon that account. The court further found that it is true that said leasing agreement contained the following words: "Together with one

rock-crushing plant with a capacity of about one hundred tons per hour,'' but it is not true ''that plaintiff covenanted or warranted said rock-crushing plant to have such capacity, nor did the defendants rely upon such recital as a warranty of the capacity of said rock-crushing plant. On the contrary, the intent of the parties in executing said lease, in the use of the words aforesaid, was that such words were to be accepted merely as descriptive of the property leased and not as a covenant or warranty of the capacity of any part thereof.'' The trial court further proceeded to make findings against said defendants specifically upon the issues tendered by their counterclaim and cross-complaint respectively. In its conclusions of law the court reiterated its aforesaid finding of fact as to the words in the lease relating to the capacity of the rock-crusher as not constituting a warranty, but as merely descriptive of said portion of the property leased. The court also concluded that as a matter of law the defendants' attempted rescission of said leasing agreement was ineffective for the reason that no right of rescission then existed in favor of defendants against plaintiff. Finally, the court directed judgment against the defendant Longyear for the sums demanded in the plaintiff's complaint with interest and costs. Judgment was entered accordingly, and it is from such judgment that the defendant Longyear prosecutes this appeal.

[1] The first contention of the appellant to be disposed of is that urged by him at the opening of the trial of the cause and which was to the effect that his codefendant Boland having died since the issues in the case were made up and prior to the date set for the trial, the trial court had no jurisdiction to proceed with the trial until the legal representatives of his deceased codefendant had been brought before the court. This contention was predicated upon the assumption that the obligation of the defendants for the breach of which the action had been instituted was a joint obligation and the liability of the defendants thereon a joint liability, and hence that since said action had been abated as to one of said defendants by virtue of his death, it was in abeyance as to both until revived by proper proceedings against the legal representatives of the decedent. This assumption, however, fails in the light of section 1659

of the Civil Code, which reads as follows: "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." In the case of *Gummer* v. *Mairs,* 140 Cal. 535, 537 [74 Pac. 26, 27], this section of the Civil Code was construed as applied to tenants in common in the following language:

"In this case the consideration for the promise inured to the benefit of Enos and Mairs equally. They purchased the whole of the land, each taking an equal interest, and were tenants in common, and the 'presumption,' therefore, is, that their promise was 'joint and several.' It is quite true that, notwithstanding the consideration moving to each was the same, the contract might have been made a joint contract by an express statement or agreement to that effect, but in the absence of evidence showing a contrary intention, the presumption stated in said section 1659 must control."

A like interpretation was placed upon this section of the Civil Code in *Bell* v. *Adams,* 150 Cal. 772 [90 Pac. 118], and *De Angeles* v. *Cotta et al.,* 62 Cal. App. 691 [217 Pac. 821]. There being nothing in the instrument itself to overcome this presumption, it follows that the trial court was correct in holding that the obligation of these defendants was a joint and several obligation and hence that the action might have been begun and might proceed against either of them in so far as an individual remedy against either was sought, unaffected by the death or other disability of the other defendant. [2] The appellant, however, urges that since the defendants had united in their answer, counterclaims, and cross-complaint, a different situation was thus created which prevented the trial court from proceeding to hear and determine the merits of the defendants' affirmative pleadings until the legal representatives of the appellant's deceased codefendant had been brought before the court. [3] We are unable to perceive, however, how the defendants by uniting in their defenses and affirmative pleas could operate to change the nature of the proceeding from a joint and several action to a joint action; but conceding section 382 of the Code of Civil Procedure to be applicable to such a situation, we incline to the view that the requirements of said section were intended solely for the benefit of the

defendant (in this case the plaintiff and cross-defendant), and hence could be waived by him; and if so were waived by his insistence upon proceeding with the trial. By such waiver, the appellant herein was not injured and hence cannot complain. The trial court therefore properly determined to proceed with the trial of said action as to the defendant Longyear and to render a judgment therein affecting only the rights and defenses of the living defendant before it.

[4] The next and, in fact, the main contention of the appellant herein is that the leasing agreement in question contains an express warranty that the rock-crushing plant upon the leased premises had a capacity of 100 tons per hour, which warranty being violated the lessees had all of the defenses and affirmative rights and remedies which are asserted in their answer, counterclaims, and cross-complaint. The alleged express warranty as to the capacity of the said rock-crushing plant occurs in that portion of said leasing agreement which embraces the description of the premises leased and their appurtenances, and is in fact a part of said description. It is embraced in no other portion of the leasing agreement and is noticeably absent from the particular portion thereof which purports to set forth the respective covenants, obligations, and liabilities of the lessor and lessees respectively as parties to said agreement. There is also noticeably absent from the clause in said portion of said lease which embraces the words, "Together with one rock crushing plant with a capacity·of about one hundred (100) tons per hour," any words of express warranty or any other words evincing an intention that said phrase was inserted therein for the purpose of warranting the capacity of said rock-crushing plant. Being inserted in said instrument as an obvious portion of the description of the premises leased and their appurtenances, the natural assumption is that the phrase in question was intended merely as an identifying part of said description. This assumption might be weakened or overthrown, it is true, by the language of other portions of said leasing agreement indicating an intent on the part of the lessor to warrant the capacity of said rock-crushing contrivance, but when we look to the body of said instrument generally we find the existence of conditions

which strengthen rather than overthrow the assumption that the phrase in question was merely descriptive of said appliance and was not intended to warrant its working capacity. The instrument discloses that the rock-crushing appliance in question was old and apparently much out of repair and that, by the express terms of said lease, the burden was placed not upon the lessor but upon the lessees of putting and of keeping said rock-crushing plant in workable order. These conditions and agreements are inconsistent with the idea that the lessor, by the use of the phrase referred to and in the portion of said lease wherein the same is found, intended to warrant the working capacity of a complicated appliance which was not in working condition at the time of the execution of said lease and of its delivery to the lessees thereunder, and which the latter and not the lessor were to assume the responsibility and expense of putting and keeping in condition for its intended use.

We are of the opinion that the trial court was correct in its interpretation of the foregoing phrase in said leasing agreement as constituting words of description and not of warranty. This conclusion renders unnecessary a determination of the question as to whether the phrase in question is to be interpreted as referring to a contemplated capacity in said rock-crushing plant of 100 tons per hour of crushed rock only or of crushed rock, sand, and gravel passing through said plant, although there was much evidence introduced into the record relating to this disputed interpretation.

[5] The next contention which the appellant urges is that the rock-crushing plant, the operation of which constituted the main use to which the leased premises were to be put, having become dangerous to life and limb and unsafe to operate after its delivery to and attempted operation by said lessees, they were entitled to treat said leasing agreement as terminated under the provisions of sections 1932 and 1933 of the Civil Code. This contention is predicated upon one or both of two alleged supports. The first of these is the alleged guaranty of the working capacity of said plant, but this support, as we have seen, has failed. The other support relied upon is that of the evidence showing the unsafetyness of further attempts to operate said

plant after a few months of endeavor so to do, arising from its age, original deficiencies of construction, and general worn-out condition. As to this, however, the state of the evidence was that of substantial conflict, and the findings of the trial court were against the said defendant's contentions in each and all of the foregoing regards. The findings of the trial court were also against the defendant upon the issue presented in his answer, counterclaims, and cross-complaint as to existence of any false representations on the part of said plaintiff as to the condition or capacity of said rock-crushing appliance or as to any reliance placed by the said lessees thereon which would have entitled them to a rescission of said agreement and as a result deducible from these findings, the trial court found and concluded that the said lessees not only were not entitled to rescind said leasing agreement, but that their attempted rescission thereof was ineffectual as defective in substance and as attempted too late. It is almost needless to reiterate that this court will not disturb the findings of the trial court upon these matters based as they are upon substantial conflicts in the evidence presented in the case.

[6] Finally, the appellant contends that the trial court committed reversible error in overruling the said defendant's objections to the introduction of certain evidence relating to conversations between said plaintiff and the appellant's codefendant Boland, and also between the plaintiff and certain other persons more or less intimately associated with this particular defendant during the pendency of the negotiations preceding the making of said lease. These conversations had relation to the issue raised by the said defendant in relation to his right to rescind said leasing agreement, when he attempted so to do, and bore upon his contention and testimony that he had no knowledge of the plaintiff's breach of his aforesaid warranty or of the defective condition of said plant prior to July 1, 1917, when or shortly before he made his attempted rescission; but since we have hereinbefore held that the plaintiff committed no breach of warranty, and since the right of the defendant to rescind said agreement was properly denied by the trial court on other grounds, the error, if any, of the trial court in the admis-

sion of said testimony becomes immaterial, and hence furnishes no ground for a reversal of the case.

The judgment is affirmed.

Waste, J., Seawell, J., Myers, C. J., Lennon, J., and Lawlor, J., concurred.

Shenk, J., deeming himself disqualified, did not participate herein.